**STATE, Plaintiff-Appellee, v. CLOUD, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24973. Decided July 1, 1960.

Minor, Stokes & Stokes, for plaintiff-appellee.

John T. Corrigan, Pros. Atty., Richard Miller, for defendant-appellant.

## OPINION

By KOVACHY, J.

This appeal is on questions of law from a judgment entered in the Court of Common Pleas wherein the defendant-appellant, Philip Edwin Cloud, was found guilty by a jury of eight counts of an indictment charging separate violations of the narcotic laws of Ohio and was sentenced to the Mansfield Reformatory.

The State of Ohio obtained conviction, in the main, on evidence obtained by an informer in cooperation with the Narcotic Squad of the Cleveland Detective Bureau. The record discloses testimony, which is unrebutted, that the informer, one Jessie Jones, had been "caught - - with drugs on his person" and was freed by the police on condition that he cooperate with the police to "turn people in."

The record also discloses that Jones was a friend of the defendant for many years, had borrowed money from him on several occasions and had obtained the signature of the defendant as a co-signer on a note to purchase an automobile and that the two had quarreled about an illegitimate child born to a mutual girl friend and allegedly fathered by

Jones. There is evidence that Jones surreptitiously obtained a key to defendant's apartment.

The defendant is a young man, 27 years of age, and employed in his parents' flower shop. He has no criminal record. Neighbors, business and professional persons, twelve in number, testified as to his reputation as a law-abiding person.

Jones testified that he purchased a marijuana cigarette on one occasion from the defendant for $1.00, which dollar bill was furnished him by detectives, and that one week later he made a second purchase for $8.00. The detectives entered defendant's home after the alleged second purchase and found the money which had been marked for identification on defendant's person, and also, upon searching the apartment, found some bulk marijuana wrapped in paper inside a bag of dog food. The defendant claimed, as a defense, that the money given him by Jessie Jones and found on his person by the detectives was repayment of a loan and that the narcotics were "planted" by Jones.

I. The first assignment of error claims error on the part of the trial court "in permitting incompetent evidence over defendant's objection which was highly prejudicial."

The record shows that the prosecutor asked several of defendant's character witnesses whether their opinion as to the reputation of the defendant as a law-abiding person would be different if they were told that detectives found narcotics in defendant's residence.

To one such question asked of a witnes, an objection was interposed by the defendant and overruled by the court. To the same question asked of another witness, no objection was interposed. And to the same question asked of a third witness, an objection made was later withdrawn by the defendant upon the witness giving a favorable answer.

We cannot entertain this assignment of error,. A party cannot take an inconsistent position with respect to the same question during the trial of the cause and be in a position to claim error in a reviewing court.

The defendant further contends under this assignment of error that the court was in error in not permitting the following rebuttal question: "If, Sir, it became apparent if the stuff was planted there - -." The objection made by the state was sustained. We hold this to have been error on the part of the trial court. The prosecution was permitted to ask a question incorporating the facts claimed by it while the defendant was denied the privilege of asking a similar question, in rebuttal, incorporating the facts claimed by him. This was not "even-handed" justice and was prejudicial.

II. The second and third assignments of error claim misconduct on the part of the prosecuting attorney "which was extremely prejudicial to defendant" and failure of the court to withdraw a juror and declare a mistrial by reason thereof.

The record discloses many instances of misconduct of the assistant prosecuting attorney, which conduct in our opinion was prejudicial to the substantial rights of the defendant and prevented him from having a fair trial.

1. He asked these questions of the mother of the defendant on cross-examination:

"Q. Mrs. Cloud, you and your husband and one of your other sons went down to the police station to talk to the police, and your son, after he was arrested, didn't you?

"A. Yes, we did.

"Q. What is your other son's name, that went down?

"A. John M. Cloud.

"Q. Now, isn't it a fact, Mrs. Cloud, that your son, John, made some statements to the police to the effect that he didn't see anything wrong with marijuana; that some day the law would repeal the Narcotic Act?

"A. I don't remember.

"Q. You don't remember. Could he have said it?

"A. I don't think so. I don't remember.

"Q. Didn't your son, John, in the presence of you and your husband and the detectives, and this detective, also, make a statement to the effect that his brother should never have been arrested because the people are making the same mistake about marijuana that they made about whiskey?

"A. No, I don't remember him saying anything like that."

The record shows no objection.

Later, when the detective, who claimed to be present when such statement was made by John M. Cloud, was testifying, it was disclosed that the defendant was not present during this claimed conversation. The defendant on this occasion objected to the introduction of all this testimony. The objection was sustained and the jury instructed to disregard the claimed statement. John M. Cloud did not testify nor was he in any way involved in the case. The prosecutor stated in open court that he knew that the defendant was not present and "not bound by it."

Under these circumstances, it seems obvious to us that the only purpose in introducing this evidence was to prejudice the jury against one coming from a family with such anti-social thinking. Now, it is the duty of the prosecutor to present all relevant and pertinent evidence bearing on the guilt of the defendant. But to introduce incompetent evidence in order to arouse a feeling of antipathy against the defendant is unfair and reprehensible. The mere instruction to a jury to disregard the testimony of such an incident cannot eliminate the impact of it upon their memories and entitles a defendant to a reversal.

It is stated in **39 O. Jur. 693, Section 114:**

"* * * Thus, withdrawal of questions calling for incompetent evidence may cure the error, although there may be instances in which the asking of a question which suggests to the jury matters which are likely to prejudice them against the adverse party or the interjection of other improper matters may constitute such misconduct as to entitle the party injured to withdraw a juror or to require reversal, notwithstanding the court strikes it from record and directs the jury to disregard it."

See Gawn v. State, 13 O. C. C., 116, syllabus III of which reads as follows:

"Misconduct of Prosecuting Attorney.

"1. When the natural and probable effect of an improper address to the jury by the prosecuting attorney, is to create an unjust prejudice

against the defendant, and secure a decision influenced by the prejudice so created, a new trial should be granted.

"2. The neglect of counsel for defendant to make objection to such misconduct at the time, will not preclude its consideration upon a motion for a new trial, where its prejudicial effect could not have been prevented thereby."

See also, Medick v. Bulkley, 16 Abs 640 (App.), syllabus 9.

2. He argued: "Don't you think these men have made an investigation prior and during and after they - - they even said they made a surveillance between the two sales. Do you think that they are stupid?" The objection to this argument was overruled despite the fact that the record is devoid of any evidence that any investigation or surveillance was made of defendant's premises.

3. He argued with respect to witness, Ann Shepard, who was a mutual friend of the defendant and Jones and who was claimed to have borne a child fathered by Jones: "And she has the audacity, under oath, to say that Jones is the father. Yet she has never done anything to that baby to legitimatize it or get any legal support. Could it be there were so many other men involved that it is impossible to determine whether it was Jones or not?" The objection hereto was overruled. There is no evidence in the record to warrant such statement and therefore the jury should have been instructed to disregard same and especially to disregard any reference to "legitimatizing" an illegitimate child. See Urbanowicz v. Roman, 18 O. C. C. N. S., 61.

4. He argued, although the record was devoid of any testimony to support same: "And, ladies and gentlemen, where does the man get the $8 to buy this, or the one dollar? A dope addict? From you people. From society. The person has to get a certain amount and if he doesn't have a job—and most of them don't—they have to get the money. So how do they get the money? That is the real problem. That is the seriousness of it that you people suffer, you, in the community, muggings, robberies, burglaries; they will do anything, anything in the world to get the money to buy this for one dollar, and that fattens their pocket. There is the crux of narcotics. That is why it is so serious. That is why the public is aroused and these boys are doing such a job, and they have to use the people they do. There is your reason why. You take sympathy—if you stop the seller, you stop the addict, and if you stop the addict, you wouldn't be reading about so many crimes that they commit."

The prosecutor in this instance was not referring to evidence disclosed in the record. This statement does not urge the jury to convict the defendant after a careful and unbiased consideration of the facts but rather to convict on an emotional appeal based on the public demand to stamp out the narcotics evil, the sole effect of which could only have been to arouse passion and prejudice against the defendant.

5. Counsel for defendant said in argument: "One week ago Sunday I talked in an interview—I think it is WJMO, that radio station at Cedar and Lee, on a panel involving criminal prosecution. This is one of the questions which was asked of me—maybe some of you heard it, but I don't imagine so. Sunday at 6 o'clock.

" 'Mr. Minor, while you were in the cases you prosecuted, do you think any of those persons were innocent?'

"I gave an honest answer. I said, 'Percentagewise, I cannot escape thinking some of those persons were innocent, but I didn't know it. I am only guessing because all that I had to work with, as a prosecutor, would be the evidence which was brought in; all that the police have to work with is the evidence which was brought in.

" 'In those thousands of cases in which I participated as a prosecutor, can I, percentagewise, say in every one of those cases the persons furnishing the testimony all gave honest testimony?

" 'Percentagewise I prosecuted three or four thousand cases. Someplace in there there was some spite. Some place in there there were some motives on the part of some individuals who would give testimony.'

"The police, of course, they wouldn't know. Understand, I am not saying the police. The police take what they are given. The prosecutor takes what he is given.

"God forgive me for it, but I know that I must have participated in some cases, as you have in this one, where somebody had a strong motive to give evidence that would convict somebody. How do I know it?

"And, so, I say I do not castigate the prosecutor or the police department who will sail idly, because they have to take what they are given."

The prosecutor answered by saying: "You do not deal in percentages down here. And I have never guessed that I had made a mistake in the two years that I have been here, nor the five years that I have been out in the practice of law. If I were to make a guess, ladies and gentlemen, and if we do guess in this building, Mr. Minor, we wouldn't need you. We wouldn't need that Court, a Judge. You wouldn't even need me as a prosecutor. You would just need the jungle law."

The objection to this clear misinterpretation of the statement of counsel for the defendant was overruled by the court.

6. The prosecutor then said: "And if I thought that I was making a mistake, if I thought I was prosecuting an innocent man, ladies and gentlemen, I would drop (sic) this indictment up here right before your eyes."

The objection made to this likewise was overruled.

7. Later in argument the prosecutor said: "I have never prosecuted an innocent man, and if I thought I would, I would nolle the case or rip that indictment up."

This language of the prosecutor told the jury that it was his opinion that the defendant was not innocent and, ergo, that it was his personal opinion that the defendant was guilty. The rule of law in Ohio is well-settled that a prosecutor commits reversible error in stating in argument to a jury that in his personal opinion a defendant in a criminal case is guilty of the crime charged.

In **State v. Thayer, 124 Oh St 1,** 176 N. E. 656, the syllabus reads:

"The trial court, in a criminal case, appointed an able lawyer of high personal character and good reputation, well known to the jury, as special counsel to assist the prosecuting attorney in the trial of the case. That special counsel, in an address to the jury, said: 'Now, I

can say this to you, Ladies and Gentlemen of the Jury, as an attorney, I probably would in some cases defend a man even though he were guilty, and do everything that I could to see that he got all his legal rights as a defendant, but I will also say, and I am saying it from the bottom of my heart, that unless the investigation that I would make before giving my consent to go into a case as special prosecutor, convinced me that I was justified in taking that side of the case, I would never—I would never accept the appointment to prosecute a man that I believed from the investigation was innocent of the charge.' Counsel for the accused promptly objected and moved the court order a mistrial; thereupon the prosecuting attorney said: 'We feel that it is entirely just in the light of the evidence.' The court overruled the motion for mistrial and exception was saved.

"Held: The statement of special counsel to the jury was misconduct, highly prejudicial to the accused, and the action of the trial court in overruling the motion of accused for a mistrial was prejudicial error which necessitated a reversal of the judgment entered in that court."

See also, **Weitz v. State**, 48 Oh Ap 421, 194 N. E. 386; **Turner v. State, 21 Abs 276 (App.).**

8. He argued further: "* * * But, if you people are so fortunate to serve on other juries after this—I hope you will be—you will be here two weeks, and if you sit on a burglary case, nine out of ten times you will find that the defense, the person found committing the burglary or running away from the scene, just happened to be in the alley to urinate, and that is a fact. Nine out of ten of them, that is their defense. If it is an offense for shooting or fighting or stabbing, the defense is self-defense, nine out of ten times. If it is an offense of a stolen automobile, nine out of ten times the defense is, 'I was drunk and didn't know what I was doing.' If it is statutory rape, the defense is that, 'I thought the girl was 30 years old, not 15.'"

Counsel for the defendant objected to this line of argument, which was overruled again, to the prejudice of the defendant because it was extraneous matter that was outside of the record with no evidence whatever to support it and only served the purpose of prejudicing the jury against this defendant by urging it to disregard the defense made by the defendant on the ground that foolish defenses are the rule in criminal cases generally.

Defendant complains of other statements made by the prosecutor in argument which he maintains were improper and prejudicial to his substantial rights. We do not consider these complaints for the reason that no objection was made at the time the statements were made by the prosecutor and they all involve statements which, if improper, were of such a nature that they could have been cured at the time by instruction on the part of the court to the jury to disregard them, had objections been made.

Arguments of counsel in the trial of a lawsuit are permitted for the sole purpose of aiding the jury in analyzing the evidence and thus assisting them to determine the facts of the case. Arguments made to incite a jury to convict to meet a public demand are inimical to the basic rights of a defendant since they prevent him from having a fair

and impartial trial to which he is entitled under the law. The law contemplates that he should be convicted on facts proven beyond a reasonable doubt under law applicable to facts so proven. Such trial was not accorded this defendant.

III. The fourth assignment of error claims an error of the trial court "in not withdrawing from the jury's consideration counts four and eight of the indictment relating to permitting the use of a dwelling house to dispense, keep or administer a narcotic drug."

The pertinent parts of counts four and eight read: "* * * did unlawfully and knowingly permit the use of dwelling house controlled by him, to wit: 8811 Esterbrook Avenue, Apartment 6, located in the City of Cleveland, Ohio, for the illegal keeping or dispensing a narcotic drug, to wit: Cannabis, commonly known as Marijuana."

The statute on which these counts are based, §3719.101 R. C., reads as follows:

"No person shall knowingly permit the use of any store, shop, warehouse, dwelling house, vehicle, boat, aircraft, or any other place whatever owned or controlled by him for the illegal keeping, dispensing, or administering of narcotic drugs."

The appellant contends that the statute "was not intended to refer to or embrace the person actually in possession of the narcotic," but rather applies to one who knowingly permits someone other than himself to use his dwelling house for the keeping and dispensing of narcotic drugs.

We overrule this contention on the authority of **State v. Murray, 82 Oh St 305,** 92 N. E. 467, syllabus 1, which reads as follows:

"1. Where on the trial of an indictment charging the accused as owner and occupier of a certain building, with having unlawfully and knowingly permitted to be kept therein a bucketshop office and place wherein he permitted the pretended buying and selling of stocks, grain, etc., on margins, the proof shows that the accused himself kept the place and personally conducted and carried on therein said unlawful business, there is no such variance between the allegations of the indictment and the facts proved as to warrant the court in directing a verdict for the defendant."

This pronouncement of the law by the Supreme Court of Ohio in 1910 remains unmodified or changed and we believe states the law with respect to the statute involved in counts four and eight.

The judgment, accordingly, is reversed and cause remanded for further proceedings according to law.

Exceptions. Order see journal.

SKEEL, J, HURD, PJ, concur.