## State v. Kennedy
### Case No. 88CA93
### Mahoning County, (7th),
### Decided February 16, 1990
[Cite as 1 AOA 236]

*For Plaintiff-Appellee: James A. Philomena, Prosecuting Atty. Kathi L. McNabb, Asst. Pros. Atty. Mahoning County Courthouse, Youngstown, Ohio 44503,*

*For Defendant-Appellant: Atty. David A. Bobovnyik, 120 Westchester Drive, Suite 1, P. O. Box 4338, Youngstown, Ohio 44515.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Mahoning County, Ohio.

On April 22, 1988, defendant-appellant, Alvin Kennedy, was indicted by the Mahoning County grand jury on two counts of aggravated robbery, two counts of kidnapping, and one count of rape. A jury trial began on May 3, 1988. On May 6, 1988, the jury returned a verdict of not guilty on both counts of aggravated robbery. The jury found that appellant was guilty of two counts of kidnapping and one count of rape, violations of R.C. 2905.01(A) (2) and 2907.02(A) (2), respectively. Appellant was sentenced to ten to twenty-five (10-25) years for one kidnapping charge, eight to fifteen (8-15) year on a second kidnapping charge, and ten to twenty-five (10-25) years on the rape charge.

The issues presented to us are based on a claim of prosecutorial misconduct during closing arguments and a claim that the decision of the trial court was against the manifest weight of the evidence.

The facts presented by both parties in this appeal, regarding the circumstances leading to these indictments, are greatly dissimilar. Appellant states that on February 19, 1988, he was on Griffith Street in Youngstown with five of his friends, when a burgundy Chevrolet Malibu approached with two women, Rebecca Spiegel and Mara Guira. According to appellant, the driver, Spiegel, rolled down the driver's window and appellant approached to find that the two women were interested in purchasing marijuana. Appellant states that he was invited to get in the car, which he accomplished from the driver's side. Appellant states that he told the two women that he could sell them a white powdery substance for $100 per gram. According to appellant, the two women gave him $30 in cash and two rings as collateral for the purchase of the white powdery substance. Appellant and the two women then drove to a bank drive-through; however, Guira left the car and entered the bank to make a withdrawal. At that point, appellant and Spiegel drove through the north side of Youngstown until they were stopped by the Youngstown police department. Apparently, Guira informed the bank employees that she and Spiegel had been kidnapped. When the victims' car was searched, a gun was found on the floor of the vehicle under the front seat. Appellant notes that after his arrest, Spiegel claimed that appellant forced her to engage in two acts of felatio.

Appellee state of Ohio's recitation of the facts is completely different.

The testimony of the two State's witnesses is as follows:

The two women did drive to Griffith Street for the purpose of purchasing marijuanna. When the women came to a stop at Griffith and Delaware, they were approached by appellant who had what appeared to be a gun and told them to let him in the car or he would kill them. Appellant ordered Spiegel to drive the car and park it in a parking lot on Griffith Street. Appellant took $30 and rings from the victims. Appellant forced Spiegel to perform an act of oral sex. Appellant then forced the women to drive to a bank where Guira indicated she had an account. Guira entered the bank; however, Spiegel was forced to drive around the area and perform another act of oral sex. Guira informed the bank manager of the incident and the police were contacted.

Spiegel later testified that the gun found by police was the one pointed at her by appellant. One of the police officers testified that this gun was actually a starter's pistol but that an average person would not know that a starter pistol could not fire a bullet.

Appellant puts forth two assignments of error, the first of which states:

"The trial court erred by allowing the prosecutor to appeal to the passion and prejudice of the jury during his closing argument and in allowing the prosecuting attorney to argue facts not in the record."

Under this assignment of error, appellant argues that the prosecutor made statements in closing arguments that appealed to the emotions of the jury and thereby impinged upon appellant's right to a fair trial. Specifically, appellant cites the supplement of the transcript of proceedings at pages 9-13:

"MR. RICH: He's right, I couldn't wait to get up here. What a fantasy story. You listened to the testimony and you are to consider the testimony, not the fantasy story of Mr. Morley.

"* * * (B)ut why would anybody in their right mind make up a story about this guy raping them? Would you want to get up in front of people and admit this creature did that to you? * * * This fantasy about

selling Cocaine, * * *"

"* * * There is no way -- there is absolutely no way that you can say deep down that these girls 'got what they deserved.' And I hope -- because if you acquit Alvin Kennedy that's what you are saying -- but, worse than that, what you are doing is saying is, Alvin Kennedy, we're sending your (sic) right back to the school on Griffith Street to sell some more drugs.
"MR. MORLEY: Objection.
"MR. RICH: That's really what you're doing --
"MR. MORLEY: Objection.
"MR. COURT: This is argument.
"MR. RICH: That's what he does for a living, he hangs around the corner selling drugs.
"MR. MORLEY: Objection.
"MR. RICH: And tries to beat up people.
"MR. MORLEY: Objection."

In *State* v. *Cloud* (1960), 112 Ohio App. 208, it was held, at 217, as follows:

"Arguments of counsel in the trial of a lawsuit are permitted for the sole purpose of aiding the jury in analyzing the evidence and thus assisting it in determining the facts of the case. *Arguments made to incite a jury to convict to meet a public demand are inimical to the basic rights of a defendant, since they prevent him from having a fair and impartial trial to which he is entitled under the law.* The law contemplates that he should be convicted on facts proved beyond a reasonable doubt under law applicable to facts so proved." (Emphasis added.)

Appellant argues that the prosecutor's remarks were erroneous and prejudicial to the basic rights of appellant and that such comments call for conviction as a duty to society and not by reason of proof of guilt.
Appellant states that the characterization of him as a creature and as an individual earning a living selling drugs and beating up people was designed to inflame the jury.
In response, appellee states that the Ohio Supreme Court has indicated that states are afforded a fair degree of latitude in closing arguments. *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583. Appelle continues that any error in the State's closing arguments is harmless

beyond a reasonable doubt in light of the whole record, and that reversal is not required. Appellee supports this contention with two citations, *State* v. *Zimmerman* (1985), 18 Ohio St. 3d 43, and *State* v. *Smith* (1984), 14 Ohio St. 3d 13. Appellee points out that the reference to drug trafficking was supported by the testimony from one of appellant's own witnesses, at pages 117-119:

"Q. Did you ever see Alvin do that before, selling drugs down on the street?
"A. No. He go like this when cars come down and stuff.
"Q. They come and they stop:
"A. Yes.
"Q. And they're selling drugs then?
"A. Yes.
"Q. Angela, the only thing you know is you saw Alvin go to the car and get in the car, is that right?
"A. Yes.
"Q. Is that standard when he sells drugs to people to get in their car?
"A. Yah, you can get in the car."

Appellee argues that the comments of the prosecutor are reasonable inferences in light of the testimony.

We find that the remarks by the prosecutor regarding the selling of drugs was related to the evidence as presented in the record and find no error in that regard.

However, the prosecutor's statement, wherein he asked the jury to, in effect, be in the victim's place: "Would you want to get up in front of people and admit this creature did that to you?". and the other comments that implicitly call for a conviction as a duty to society and not by reason of proof of guilt, were error. The issue now before us is whether the error was prejudicial to appellant or amounted to harmless error.

In *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, the Ohio Supreme Court refused to reversed the death sentence of an individual complaining of prosecutorial misconduct in closing argument. In *Beuke*, the prosecutor described the defendant as a "'cancer,' requiring removal" and expressed fear of the defendant. *Id.* at 33. In upholding the conviction, the court wrote that although the prosecutor's practice was "disfavored * * *, [it] is not prejudicially erroneous if predicated upon the evidence." *Id.* citing *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 82-83.

We find that the record contains overwhelming evidence in the form of testimony as to appellant's guilt beyond a reasonable doubt.

In particular, Rebecca Spiegel testified that appellant pointed a gun, got into her automobile, and ultimately raped her (Tr. 4-18). She testified that she drove to a nearby bank so that her companion could get money to give to the appellant (Tr. 14). While her companion was in the bank, the appellant again raped the victim (Tr. 15).

In corroboration of her testimony, Sergeant Ondomisi stated that Spiegel was "distraught" at the time of appellant's apprehension (Tr. 79). Additionally, a starter's pistol was found in the vehicle and identified by both victims as being the one used by the appellant in perpetration of these crimes (Tr. 17, 47). It should also be noted that when the appellant was arrested, he had in his possession both victims' rings (Tr. 70).

Mara Guira also testified that the appellant pointed a gun at her and Spiegel and abducted them (Tr. 37-47). She also witnessed the rape of Spiegel (Tr. 44). Although Guira did not have an account at the bank, she was able to inform the bank manager of their dilemma (Tr. 46).

At trial, the bank manager testified as to the appearance of the young woman. He indicated that she was "trembling * * * [and] * * * close to crying * * *" (Tr. 88).

Appellant also cites to us our case of *State* v. *Ifft* (C.A. 7, 1989), Mahoning County Case No. 87 C.A. 166, unreported, wherein a conviction was reversed in part because of statements made by the prosecutor. We find that that case is distinguishable from the instant case. The *Ifft* case involved comments by the prosecutor in regard to the defendant's maintaining silence, which was prejudicial error involving the defendant's constitutional right under the Fifth Amendment to remain silent. In addition, there were comments by the prosecutor that were prejudicial. Here, in spite of those comments we held to be error, there was overwhelming evidence as to appellant's guilt.

For the foregoing reasons we overrule appellant's first assignment of error.

Appellant's second assignment of error states: "The decision of the trial court was against the manifest weight of the evidence."

In *State* v. *Eley* (1978), 56 Ohio St. 2d 169, the Ohio Supreme Court has held that:

"A reviewing court will not reverse a jury verdict where there is substantial evidence

upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

In this second assignment of error, the appellant appears to be questioning the credibility of the prosecution witnesses. However, credibility is a question of fact to be determined by the jury and the reviewing court should not substitute its judgment for that of the jury. *State* v. *Walker* (1978), 55 Ohio St. 2d 208 at 212, citing *State* v. *Kehn* (1977), 50 Ohio St. 2d 11. Thus, much discretion must be afforded to the trier of fact.

As set forth in Assignment of Error No. 1, both victims, Spiegel and Guira, testified as to the actions of the appellant. Their testimony was corroborated by the investigating officers, the bank manager, and the evidence found at the time of appellant's apprehension. The discussion under Assignment of Error No. 1 is equally applicable hereunder as to the evidence adduced from the record.

Under this assignment of error appellant, in addition, argues that by finding him innocent of the aggravated robbery counts the jury expressed its beliefs that he was invited into Spiegel's car for the purpose of conducting a drug transaction. Appellant believes this finding by the jury contradicts the testimony provided by the victims when they stated that appellant forced his way into the car with the use of a gun. Appellant contends that the only logical inference that can be made from the jury's acquittal on the aggravated robbery is that appellant did not have a gun on his person at the time he entered the motor vehicle. Appellant argues that if the jury believed that the parties were voluntarily engaged in a drug transaction, and not the victims of an aggravated robbery, then how could the jury find that the girls were deprived or restrained of their liberty?

Again, the appellant is bringing up the question of credibility of the witnesses as assessed by the fact-finders. This assessment of credibility of the witnesses is purely within the power of the fact-finder and as a reviewing court, we have no power to assess credibility. Further, in *State* v. *Brown* (1984), 12 Ohio St. 3d 147, syllabus, the Ohio Supreme Court has stated:

"The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count. (*Browning* v. *State*, 120 Ohio St. 62; *State* v. *Adams*, 53 Ohio St. 2d 223 [7 0.0 3d 393], paragraph two of the syllabus, approved and followed.)"

For the foregoing reasons we overrule appellant's second assignment of error and accordingly affirm the judgment of the trial court.

*JUDGMENT AFFIRMED*

O'NEILL, P. J., COX, J., Concur.