Defendant-appellant, Johnny Lynn, appeals a criminal conviction obtained in the Mahoning County Common Pleas Court. Following a jury trial, appellant was found guilty of murder.
Appellant, also known as "Tiny", and Tonya Evett North, the victim, were acquaintances living in the same neighborhood. North occasionally sold drugs to appellant. On July 3, 1996, appellant and North got into an argument over money relating to a drug transaction. The dispute allegedly was over the amount of $8.00. After the argument, North went to her home and appellant went to his brother's home.
Appellant asked for his brother's assistance in recovering the money from North. Appellant and his brother, Melvin Young, left Young's house to confront North. They began walking west on West Woodland Avenue. Meanwhile, North had left her house and began walking east on West Woodland Avenue. All three converged and appellant and North ended up in a physical altercation. Appellant fatally stabbed North. A friend of North's, Michelle Brown, approached the scene brandishing a pair of lawn shears. Appellant and Young fled the scene. Appellant was found shortly thereafter hiding in his basement and was arrested. A bloody knife was recovered five feet from where he was found.
On July 3, 1996, the Mahoning County Grand Jury indicted appellant for aggravated murder in violation of R.C. 2903.01. Appellant went to trial on September 12, 1996. The jury found appellant guilty of the lesser included offense of murder in violation of R.C. 2903.02. On September 25, 1996, the trial court sentenced appellant to a mandatory indefinite term of 15 years to life. This appeal followed.
In his first assignment of error, appellant alleges that:
 "THE TRIAL COURT ERRED IN NOT CHARGING THE JURY ON THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER."
Involuntary manslaughter is a lesser included offense of aggravated murder. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph one of the syllabus. Furthermore, "an instruction on the lesser included offense of involuntary manslaughter will be given in a murder trial only when, on the evidence presented, the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another." Id. at 216.
R.C. 2901.22 (A) discusses the element of purposefulness:
 "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
The involuntary manslaughter statute, R.C. 2903.04 (A) and (B), provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit" a felony or a misdemeanor. In a murder case, where the evidence at trial fails to demonstrate that a separate misdemeanor or felony offense was being committed at the time the victim was killed, no jury instruction on the lesser offense of involuntary manslaughter is warranted. SeeState v. Clark (1995), 101 Ohio App.3d 389, 420.
Michelle Brown and Jamall North testified that there was an argument between appellant and the victim over money. (Tr. 124, 449). North testified that appellant stated, "It ain't over yet." (Tr. 450). Brown and North also testified that, after appellant asked them of the victim's whereabouts, he stated that the victim would not make it to see the 4th of July. (Tr. 128, 463) Brown testified that, shortly thereafter, she saw appellant knock the victim down and stab the victim in the side. (Tr. 131). North testified similarly. (Tr. 472).
Melvin Young testified that the victim was brandishing a razor and threatened to cut appellant. (Tr. 747) This testimony was contradicted by Brown and North who both testified that they did not see the victim with a weapon. (Tr. 157, 531).
Officer White testified that when they were taking appellant out of his home he "yelled to the crowd that had gathered, 'The bitch gave me some bad shit so I stuck her.' " (Tr. 569) Officer Peace testified similarly. (Tr. 368).
In the instant case and as the above testimony reveals, it cannot be said that the evidence presented at trial would have both reasonably supported a finding against the state on the element of purposefulness and for the state on appellant's act of killing another. Thomas, supra. Nor did the evidence presented at trial demonstrate that a separate misdemeanor or felony offense was being committed at the time the victim was stabbed. Clark, supra.
Accordingly, appellant's first assignment of error is without merit.
In his second assignment of error, appellant alleges that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE DEFENDANT'S VIDEO STATEMENT TO BE TAKEN TO THE JURY ROOM AND REVIEWING DURING DELIBERATIONS."
The propriety of allowing a defendant's videotaped confession to be reviewed by the jury during deliberations is within the sound discretion of the trial court. State v. Clark (1988),38 Ohio St.3d 252, 257. Abuse of discretion means more than an error of law or of judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Statev. Adams (1980), 62 Ohio St.2d 151, 157.
The crux of appellant's argument is that, because the jury had his videotaped statement, they focused their attention on it to the exclusion of other testimony presented at trial. However, appellant does not point to any evidence, from which even the inference could be drawn, that the trial court abused its discretion in allowing the videotaped statement to go to the jury room.
Accordingly, appellant's second assignment of error is without merit.
In his third assignment of error, appellant alleges that:
 "THE PROSECUTOR'S MISCONDUCT DEPRIVED THE DEFENDANT OF A FAIR AND IMPARTIAL JURY"
In State v. Hopkins (March 27, 1996), Mahoning App. No. 94 C.A. 103, unreported, this court held:
 "The test for prosecutorial misconduct is whether the prosecutor's remarks are improper and, if so, whether those comments prejudicially affected the substantial rights of the accused. State v. Lott
(1990), 51 Ohio St.3d 160, 165. The prosecution has wide latitude in summation as to what the evidence has shown and as to what reasonable inferences may be drawn therefrom. State v. Stephens (1970), 24 Ohio St.2d 76, 82. The Supreme Court has held that the touchstone of a due process analysis in a case of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. See Smith v. Phillips (1982), 455 U.S. 209, 219."
Appellant's argument under this assignment of error centers on conduct of and statements made by the prosecutor during closing argument. The prosecutor stated, near the beginning of his closing argument, "I want to take this time to thank you on behalf of John Perdue of the Youngstown Police Department, and I have the liberty to thank you on behalf of the people that live around Woodland and Edwards for taking the duty of jury service seriously." (Tr. 875).
Appellant asks us to construe this statement as a call to the jury to convict him in order to make the area a safe place and cites State v. Cloud (1960), 112 Ohio App. 208, in support. This is a strained construction at best. In Hopkins, supra, we addressed a similar assertion. In that case the prosecutor stated:
 "Now, ladies and gentlemen of the jury, crime in the United States is on an all time high. And in the City of Youngstown and County of Mahoning, it's very, very crucial at this time that everything is done to try and prevent crime.
"MR. THEOFILUS: Objection, Your Honor.
 "THE COURT: Maybe we're going to a point. I don't know where are you going.
 "MR. CARFOLO: Everyone wants to take an active role in trying to prevent crime. It's part of our civil duty."
We found those comments to be improper. However, based on the judge's instructions to the jury and the substantial evidence presented at trial reflecting the defendant's guilt, we concluded that the comments were not prejudicial. In this case, the prosecutor's statement is primarily one thanking the jury for its service, a common one made by attorneys as a preface to their closing argument. It is not the kind of direct and specific call made to the jury in Hopkins. Moreover, in light of the substantial evidence presented at trial indicative of appellant's guilt, detailed infra under appellant's fourth assignment of error, we find that the prosecutor's statement was not prejudicial.
Further into his closing argument the prosecutor stated:
 "I'm going to tell you, ladies and gentlemen, the defense could criticize those officers all weekend and I'm going to tell you that they did in my opinion a hell of a job." (Tr. 887)
Appellant's trial counsel objected and the trial court judge overruled the objection. The prosecutor then continued:
 "Within one hour they had the murderer and they had the murder weapon. That ain't bad." (Tr. 887)
Appellant asks us to construe the prosecutor's reference to the "murderer" as a statement by the prosecutor of his personal opinion of appellant's guilt. The prosecutor's statement was made in the third person and was not a direct, specific, or affirmative statement of the prosecutor's opinion of appellant's guilt. Moreover, in light of the substantial evidence presented at trial indicative of appellant's guilt, detailed infra under appellant's fourth assignment of error, we find that the prosecutor's statement was not prejudicial.
Appellant also argues that the prosecutor's reference to the "murder weapon" constituted error because it was never established that the knife, which was admitted into evidence was the "murder weapon". Appellant argues that he was further prejudiced when the prosecutor circulated the knife among the jury. Referring to the knife, the prosecutor also stated, "Yes, it had wet blood on it at the time. Yes, it had tissue on it until it was removed in your presence here in the courtroom today." (Tr. 889). Appellant calls this statement "a bold faced lie" and relies on the testimony of Detective Sergeant Perdue in support.
A thorough review of the trial transcript does not bear out appellant's assertion that the prosecutor's statement was "a bold faced lie." Appellant cites only to Perdue's testimony. When presented with the knife at trial for identification, Perdue testified that it was the first time he had ever seen the knife. (Tr. 701). He testified that he could not tell whether the knife was the murder weapon (Tr. 700) and that the knife did not look bloody to him. (Tr. 720).
Although Perdue's testimony was unsupportive, the prosecutor's statement about the knife was more likely predicated upon the more relevant testimony of Officer White. White, one of the arresting officers, recovered the knife just five feet from where appellant had been hiding in his basement. (Tr. 571) When he identified and observed the knife at trial, White testified that it appeared to have dried blood and little pieces of flesh on it. (Tr. 574). Given White's testimony, the prosecutor's reference to the knife as the murder weapon was neither improper or prejudicial.
The prosecutor ended his closing argument as follows: "This is a classic case of aggravated murder. Thank you." (Tr. 892). Appellant asks us to construe this comment as a statement by the prosecutor of his personal opinion of appellant's guilt. This is a strained construction at best. The prosecutor's statement was made in the third person and was not a direct, specific, or affirmative statement of the prosecutor's opinion of appellant's guilt. Moreover, in light of the substantial evidence presented at trial indicative of appellant's guilt, detailed infra under appellant's fourth assignment of error, we find that the prosecutor's statement was not prejudicial.
Accordingly, appellant's third assignment of error is without merit.
Appellant alleges in his fourth assignment of error that:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 WHEN THE EVIDENCE PRESENTED BY THE PROSECUTOR WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF AGGRAVATED MURDER."
Crim.R. 29 states, in relevant part, as follows:
 "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction for such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 State v. Miley (1996), 114 Ohio App.3d 738, 742, stated the standard for appellate review of a motion for acquittal:
 "A motion for acquittal at the close of the state's case tests the sufficiency of the evidence. Pursuant to Crim.R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 263 * * *. An appellate court undertakes a de novo
review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. State v. White (1989), 65 Ohio App.3d 564, 568 * * *. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, * * * paragraph two of the syllabus."
A review of the record supports the trial court's denial of appellant's motion for acquittal. Two persons eyewitnessed the events leading up to and encompassing North's murder. Michelle Brown and Jamall North testified that there was an argument between appellant and the victim over money. (Tr. 124, 449). North testified that appellant stated, "It ain't over yet." (Tr. 450). Brown and North also testified that, after appellant asked them of the victim's whereabouts, he stated that the victim would not make it to see the 4th of July. (Tr. 128, 463). Brown testified that, shortly thereafter, she saw appellant knock the victim down and stab her in the side. (Tr. 131). North testified similarly. (Tr. 472).
Officer White testified that when they were taking appellant out of his home he "yelled to the crowd that had gathered, 'The bitch gave me some bad shit so I stuck her.' " (Tr. 569). Officer Peace testified similarly. (Tr. 368). The jury also had before them appellant's videotaped confession.
Construing the aforementioned evidence in a light most favorable to the state, it is clear that reasonable minds could have reached but one conclusion — that appellant purposely caused the death of North beyond a reasonable doubt.
Accordingly, appellant's fourth assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., concurs
Vukovich, J., concurs
APPROVED:
 _______________________ Gene Donofrio Judge