OPINION
This is an accelerated appeal from a Lake County Municipal Court judgment finding Yale E. Stuble guilty of driving under the influence of alcohol or drugs.
On March 10, 2000, at approximately 1:00 a.m., appellant, Yale E. Stuble ("Stuble"), was pulled over for a marked lane change violation while driving northbound on Center Street in Mentor, Ohio. As a result of the stop, he was charged with marked lane change, in violation of R.C. 4511.33, no seatbelt, in violation of R.C. 4513.263, and driving under the influence of alcohol or drugs, in violation of R.C.4511.19(A)(1). On May 8, 2000, a bench trial commenced. At the trial, Patrolman Brian Fekete ("Officer Fekete"), of the Mentor Police Department, testified that on the date and time in question, he was driving his patrol car northbound on Center Street. He testified that he pulled up next to appellant and observed that appellant "was driving rather close to the steering wheel" and "was going real slow." Officer Fekete pulled into the FirstMerit Bank parking lot, to allow appellant to pass. After getting back on Center Street behind the appellant, the officer observed appellant's two left wheels cross over the double yellow line, twice.
As a result, Officer Fekete stopped appellant for a marked lane change violation. When Officer Fekete approached the vehicle, he detected a strong odor of alcohol on or about the appellant, observed that his eyes were glassy, and that he had some slurred speech. At that time, Officer Fekete had appellant perform four sobriety tests: horizontal gaze nystagmus (HGN), heel-to-toe, finger-to-nose, and one-legged stand balance. Officer Fekete testified to appellant's performance on the sobriety tests as follows:
 "(1) appellant presented `all six cues' of the HGN test which indicated `that he was intoxicated;'
 "(2) appellant touched heel-to-toe on just one step out of eighteen;
 "(3) appellant hesitated and changed his mind as to which hand to use and was not able to touch the tip of his nose;
 "(4) appellant `was hopping constantly' and putting his feet down every few seconds during the one-legged stand balance test."
 Based on Officer Fekete's observations of the appellant's overall mannerisms, the way he conducted himself on the tests, his slurred speech, glossy eyes, failure to keep his car in the marked lane, and the smell of alcohol, appellant was placed under arrest. Appellant was read his Miranda rights, read the implied consent on the ALS form, and refused to take a breathalyzer test. Officer Fekete also testified that the appellant told him that he had a "couple of drinks."
Appellant testified that the police officer pulled into the Mentor High School parking lot, not First Merit Bank, and that Officer Fekete was never behind him on Center Street. Appellant insists that he did not have anything to drink on the night in question. Rhett John Easton ("Easton"), who was called to rebutt the officer's testimony, testified that: he was Yale's passenger on March 10, 2000; the police car was in front of them, not behind; and, Officer Fekete pulled into the Mentor School parking lot. On cross-examination, Easton explained that he had been drinking at Petticoat Junction, and called a buddy, Stuble, to give him a ride home. He testified that Stuble did pick him up and was driving his (Easton's) vehicle to the Sidewalk Café restaurant when the officer pulled them over.
At the conclusion of the trial, the judge found appellant guilty of driving under the influence. From this judgment, appellant raises the following assignments of error:
 "[1.] The trial court improperly permitted the testimony of Officer Fekete relative to the officer's conclusion that the defendant-appellant had purportedly failed the gaze nystagmus test.
 "[2.] The trial court committed error by improperly permitting the prosecutor to expand his cross-examination of defendant-appellant's rebuttal witness.
 "[3.] The decision of the trial court is against the manifest weight of the evidence."
 In appellant's first assignment of error, he argues that Officer Fekete was not qualified, pursuant to Evid.R. 702, to give his opinion regarding appellant's performance on the HGN. Appellee argues that Officer Fekete was qualified in light of the Ohio Supreme Court's holding that "the only requirement prior to admission is the officer's knowledge of the test, his training, and his ability to interpret his observations." State v. Bresson (1990), 51 Ohio St.3d 123, 129.
"A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1)."State v. Bresson (1990) 51 Ohio St.3d 123, syllabus.
In the instant case, Officer Fekete testified that Officers Lehner and Kloski, of the Mentor Police Department, trained him on the HGN test, but that he had not taken the course at the Ohio State Patrol Academy. He testified that after the two-day training course, he was certified in HGN. He also stated that Officers Lehner and Kloski were certified by the Ohio State Patrol Academy, but that he has never seen their certificates. Review of the testimony given by Officer Fekete demonstrates that he had knowledge of the testing procedures and as a result was able to determine that appellant had failed the HGN, which was just one of four sobriety tests administered by Officer Fekete. Appellant performed poorly on all of them.
We see no prejudicial error in the admission of Officer Fekete's testimony regarding the HGN test. "The procedural defects brought out on cross-examination affect the credibility of the witness, not the admissibility of the evidence." State v. Sanders (Dec. 18, 1998), Ashtabula App. No. 97-A-0049, unreported. Officer Fekete's testimony fit within the guidelines of Bresson: the testimony was given by an officer trained in the HGN test; regarding an HGN test; and, pertaining to the issue of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. "The Bresson court held that expert testimony concerning the reliability of one particular field sobriety test, the horizontal gaze nystagmus test, was not required to admit the results of that test into evidence." State v. Rootes (Mar. 23, 2001), Portage App. No. 2000-P-0003, unreported; citing Bresson at 129. HGN test results are admissible upon a showing that the officer has the training and ability to administer the HGN; Evid.R. 702 does not govern. See, e.g., Bresson at 129; State v. Homan (2000), 89 Ohio St.3d 421,425. Appellant's first assignment of error lacks merit.
In his second assignment of error, appellant argues that the court's decision to permit the prosecutor to expand his cross-examination of appellant's defense witness was prejudicial because the prosecutor attempted to introduce incompetent evidence to "arouse a feeling of antipathy against the accused." State v. McCloud (1960),112 Ohio App. 208. Appellee contends that: the trial court did not abuse its discretion in permitting the prosecutor's cross-examination; the information was volunteered by appellant's witness; and, the prosecutor's questions were within his discretion.
Evid.R. 611(B) provides that "[c]ross examination shall be permitted on all relevant matters and matters affecting credibility." A review of the transcript demonstrates that the prosecutor's cross-examination of Easton was on relevant matter affecting Easton's credibility as a witness. Easton was called as a defense witness and offered testimony that contradicted Officer Fekete's. Specifically, Easton testified that the officer pulled into the Mentor School parking lot and was never behind the appellant on Center Street. This testimony is crucial to the factfinder's determination of whether Officer Fekete was in a position to observe the appellant go left of center. As a witness, Easton's credibility was at issue and therefore his physical condition; i.e.,
whether he was intoxicated, was within the prosecutor's scope of cross-examination. While the prosecutor's cross examination was expansive, we do not find that it "arouse[d] a feeling of antipathy against the accused." State v. Cloud (1960), 112 Ohio App. 208. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, he argues that the trial court lost its way in reaching its judgment. Appellee argues that the record contains ample evidence of appellant's guilt: Officer Fekete observed appellant swerve twice over marked lanes; smelled a strong odor of alcohol on or about the appellant; and, evaluated appellant's performance on four sobriety tests.
A manifest weight of the evidence inquiry "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1988), 84 Ohio St.3d 180, 193. When "the trial court's judgment [is] supported by some competent, credible evidence going to all the essential elements," we will not reverse its judgment. Seasons Coal Co. v. City of Cleveland (1984),10 Ohio St.3d 77, 82.
An appellate court reviewing the weight of the evidence is limited to weighing the evidence adduced at trial to determine whether the state carried its burden of persuasion. State v. Patterson (May 22, 1998), Trumbull App. No 96-T-5439, unreported. In the case sub judice, the state had the burden of persuasion as to whether appellant violated R.C.4511.19(A)(1). R.C. 4511.19(A)(1) provides that "no person shall operate any vehicle * * * within this state, if * * * the person is under the influence of alcohol * * *."
It is uncontroverted that appellant was driving in the State of Ohio on March 10, 2000. Thus, the issue is whether the state demonstrated, beyond a reasonable doubt, that appellant was under the influence of alcohol. "In any prosecution for drunk driving, the state does not have to prove actual impaired driving; instead, it must only show impaired driving ability. To prove impaired driving ability, the state can rely on physiological factors (e.g., blurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired." State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported at 13-14. Officer Fekete testified that he thought appellant was intoxicated based on his observations of the appellant's performance of the sobriety tests; his slurred speech; glossy eyes; his failure to keep his car in the marked lane; and, the smell of alcohol. Officer Fekete's testimony, including his observation of appellant's inability to keep his car in the marked lane, was sufficient evidence that appellant's ability to drive was clearly impaired.
Upon reviewing the entire record and evaluating the evidence, we determine that the weight of the evidence supports appellant's R.C.4511.19(A)(1) conviction for driving while under the influence of alcohol. Appellant's third assignment of error is without merit.
 ______________________________ JUDGE ROBERT A. NADER
FORD, P.J., CHRISTLEY, J., concur.