Birchard, J.
Several questions of interest arise in this ease, which will be separately considered. The position mainly relied on by complainant’s counsel is, that the respondent could not legally purchase the premises in controversy after having acted as an appraiser,^under the sheriff, in executing the writ of partition ; and that, having so purchased, he should be charged and *237 held to an account as trustee. To sustain this point, the case of Armstrong v. Huston’s Heirs, 8 Ohio, 552, together with other’ authorities, are cited. That case presented the single question, whether an appraiser of land, at an administrator’s sale, stood in such a relation that his purchase, without fraud, could be set aside at the instance of the heirs. The case was determined by a divided court, a majority only holding that it came within the general principles of equity, which prevented those from acquiring a title to whose discretion or agency the management of a sale is confided.
Without intending to overrule or impair the force of that decision, wo are not prepared to extend it to any case where it is not strictly in point. In cases of sales by sheriffs, a statute law had prohibited a purchase by the appraiser. Since, the sale now in question was made, a law has been enacted (Swan’s Stat. 1015) prohibiting the appraiser of any tract or lot of land, from becoming the purchaser, at any sale wherein the price for which it must sell shall bo governed by his valuation as an ^appraiser.
Section 2 of this act declares that, “ every purchase of land by an appraiser thereof,” theretofore “ made at a sale by an executor, administrator, or guardian, shall be good and valid in law and equity, provided that such a sale may be set aside for actual fraud, and that the costs in suits then pending, involving the class of cases made by the section, should be decided in such manner as to the court might seem just and equitable under the circumstances. Yiewing this statute in connection with the decision in Armstrong v. Huston’s Heirs, one can scarcely doubt that the framers of the statute considered the decision of that casein assumption of their prerogative, and as evincing a departure from the true office of a judicial tribunal, which is to declare the law, not to create it. Nor can one doubt that they approved the principle upon which it is based. Hence the enactment of section 1 declares that thereafter the rule shall exist and be extended to all judicial sales subsequently to be made. By implication, this section would also seem to indicate that no such rule was, prior to that date, the law of Ohio ; for the enacting of a law like this, would be a work of supererogation, if in fact the same law was already in force.
Strongly in support of this view of what was then the mind of the enacting power, is seotion 2 of the act. It strikes at the decision itself, by making valid the identical class of sales which *238 it would render invalid, and can not be considered less than a legislative opinion that the decision was ei'roneous. With this view of the law, it is our duty to consider whether there is an identity in principle, between the case of Armstrong v. Huston’s Heirs and the case at bar. That was an administrator’s sale; this is a sale on proceedings in partition. In that, the appraisal was made in view of a sale — the proceeding could terminate in nothing else. Not so in this. The sale could not follow the appraisal as a matter of course. The object of the proceeding was to enable several co-tenants to enjoy each his own in severalty. A sale could not take place until each and all of the tenants in common had declined in court to take the property at its appraised lvalue. Atkinson must have possessed more than ordinary foresight, to have foreseen that neither of the parties would elect to take this land at the appraisal. Admitting that no one of them possessed means to pay down the amount of the appraisal, it did not follow, necessarily, that a sale would be had. The property was theirs, and, rather than suffer it to be sacrificed at a price less than its value, one, two, or more of its owners might and doubtless would have taken it, and secured to the remaining co-tenants their respective shares of the money, by mortgaging the land itself. In a case like this (in the absence of actual fraud), we should go, I apprehend, far beyond the principles established by any w^ll-considered case, were we to hold the purchase'fraudulent on the ground of public policy. We are not inclined to push a very rigorous principle to such an extent. Rules thus extended, are not to be favored; they are retrospective in their operation, when their vitality is imparted to them by the power of a court; and, like all retrospective legislation, should only be resorted to in cases of pressing necessity, and where no positive right in law or equity would be violated.
Wo approach next the question whether this purchase is tainted with actual fraud.
Complainants, in their original and amended bills, charge “that the respondent, being desirous to own this land, confederated with the sheriff, to procure him to select him as an appraiser, in order to procure an appraisal at $1,250, a sum far below its intrinsic value, and that he fraudulently appeared to bid $1,250, and fraudulently procured the sheriff to strike it off to him before the hour of sale had expired, by means of which *239 many persons who would otherwise have been bidders, were prevented from bidding.”
These allegations would be abundant to set aside the sale, if maintained by proof. Unfortunately for the complainants, the owners fairly meet them by a denial, and the evidence in the case sustains the answers. Ye think counsel feel the force of this, else why the remark that “ the defendant has taken much *pains to obtain testimony to prove that no fraud in fact attaches to this transaction, of which the plaintiffs complain, and that the land sold for its full value. After having fully answered, denying all actual fraud, he might have well spared himself the trouble of taking testimony until the opposite party had undertaken to taint it with actual fraud.” We were not a little surprised at encountering, in quick succession, after reading the above, an argument somewhat labored, with a view to convince us that there were “features in the case sufficient to throw strong suspicions on the fairness of the appraisers.” The record in partition and the fact (said tq have been notorious) that a new county had been for several years in agitation, with no other spot than this spoken of as the county seat, are the features relied upon to sustain these suspicions. Were we to run into the same train of reasoning in which counsel have ventured, we should be hardly bold enough to declare that fraud in fact actually did exist, upon nothing more than bare suspicion of its existence. Fraud is a thing to be proved. When the proof fails, it is but little use to indulge in suspicions, more especially if, as we think in this case, they are not well founded.
Again, the proceeding in partition was under the statute. If error intervened, certiorari was the proper remedy. It was a judicial proceeding, and can not be collaterally impeached unless tainted with fraud. But suppose fraud in law existed, and that we are in error in the position first taken, how then stands this case? There were seven heirs — threo adults and four minors. The adults were present at the sale, together with the guardian of the minors, and all agreed to the terms. By their agreement, one-fourth only was required to be paid in hand, and a credit of one, two, and three years was given for the balance of the purchase money. Atkinson bid at the instance of complainant’s guardian, who requested him to do so; paid them the purchase money required to he paid in hand; with them arranged the securities for the deferred installments; has since paid them in full. And *240, 241 after complainants came of *age, they ratified the acts of their guardians, by receiving and appropriating the purchase money. One of them, after receiving the money, with full knowledge of the fact, remained quiet until the period had elapsed limiting actions to recover money before he joined in filing this bill. This conduct should defeat him, were there no other obstacle in his way. The acts of the guardians should also estop them. The statute gave them the authority to act for their wards. They did so act, and their acts should, in the absence of fraud, bind the minors as effectually as if they had been adults, and had been present, acting for themselves. To permit one, who requested another to purchase — who stood by, saw the purchase made, and received his share of the proceeds — after appropriating the funds, to turn round and avoid the salo to such buyer, would be against conscience. It would be giving sanction to fraud.
Bill dismissed.