THE STATE OF OHIO, APPELLEE, *v.* MINOR, APPELLANT.

(No. 87AP-687—Decided March 31, 1988.)

*Michael Miller,* prosecuting attorney, *David L. Johnson* and *Alan Travis,* for appellee.

*Thomas M. Tyack & Assoc. Co., L.P.A.,* and *Thomas M. Tyack,* for appellant.

STRAUSBAUGH, J. This is an appeal by defendant from a judgment of the court of common pleas finding defendant not guilty of aggravated vehicular homicide, but convicting defendant for negligent vehicular homicide. The trial court further found that defendant was not under the influence of alcohol or drugs at the time of the offense.

Defendant, Brett A. Minor, at approximately 2:00 a.m. on October 25, 1985, was operating his automobile in a northerly direction on Neil Avenue proceeding in the left lane nearest the center line. As the vehicle approached the intersection of Neil Avenue and Fourth Avenue, another vehicle,

driven by decedent Laura Bobbitt, entered the intersection while traveling easterly on Fourth Avenue. Apparently, Bobbitt was under the influence of alcohol and may have failed to stop for a stop sign. As a result, defendant's vehicle collided with the passenger side of decedent's vehicle causing Bobbitt to sustain multiple injuries to which she succumbed.

Subsequently, defendant was indicted for one count of aggravated vehicular homicide, which charge contained a specification that defendant caused physical harm to decedent and that defendant was under the influence of alcohol or a drug of abuse at the time of the commission of the offense. A jury trial commenced as to the count for aggravated vehicular homicide, but defendant waived his right to trial by jury on the specification that he was operating his automobile under the influence of alcohol or drugs, which specification was tried to the court.

The state's evidence was composed primarily of two witnesses. An eyewitness testified that defendant ran a red light at the corner of Third Avenue and Neil Avenue while traveling approximately one hundred m.p.h. in a thirty-five m.p.h. zone, while the state's expert witness testified that defendant was traveling approximately sixty-five to eighty-five m.p.h. when he locked his brakes, and thirty-five to sixty m.p.h. when he struck Bobbitt's vehicle. Defendant maintained that he was neither under the influence of drugs or alcohol nor traveling in excess of thirty-five m.p.h. This position was supported by two witnesses who were passengers in defendant's automobile.

Based upon this evidence, the jury found defendant not guilty of aggravated vehicular homicide, but guilty of the lesser included offense of negligent vehicular homicide. The trial court further acquitted defendant of a specification regarding the operation of his automobile under the influence of alcohol or drugs. Subsequently, the court suspended defendant's license for three years and sentenced defendant to serve six months in the county jail.

On appeal, defendant raises two assignments of error for our review:

"1. The trial court erred in allowing the testimony of the state's expert witness, Kenneth Berchak.

"(a) Facts and data used by the witness were neither perceived by the witness or [sic] admitted in evidence.

"(b) Many of the 'hypothetical' questions were not properly formulated.

"(2) The misconduct of the prosecuting attorney deprived the defendant of a fair trial.

"(a) Questions were asked of a witness inferring that the witness had made an inconsistent statement directly to the prosecution and after the witness denied such statement, no evidence was presented to establish the existence of such a statement.

"(b) Questions were asked of the defendant inferring that he had used drugs the night of the accident and then the prosecution presented no evidence of such drug use after the defendant denied such utilization.

"(c) The Prosecutor, during closing argument, improperly attempted to inflame the jury to the prejudice of the defendant."

Under his first assignment of error, defendant maintains that the trial court erred in admitting certain portions of the expert's testimony. Specifically, defendant argues that the expert relied on information which was neither perceived by the witness nor admitted into evidence in order to estimate defendant's speed. This information concerned both the coefficient of friction for the tires on defendant's vehicle and the weight of the car. As such, defendant contends that Evid. R. 703 prohibits the admission of the expert's testimony. Similarly, defendant

argues that the trial court frequently allowed the expert to give his opinion as to hypothetical questions based upon mere speculation rather than upon scientific certainty or probability.

The state counters defendant's arguments by asserting that an expert may rely on facts not in evidence if such facts are within the general knowledge of an expert. Essentially, it is the state's position that the facts relied upon were relevant only to the expert's qualifications under Evid. R. 702 and, as such, bore no relationship to Evid. R. 703.

Clearly, the facts or data upon which an expert opinion is offered at trial must be either perceived by the expert or based upon evidence admitted at trial. Evid. R. 703; *State* v. *Chapin* (1981), 67 Ohio St. 2d 437, 21 O.O. 3d 273, 424 N.E. 2d 317; *State* v. *Jones* (1984), 9 Ohio St. 3d 123, 9 OBR 347, 459 N.E. 2d 526. On the other hand, an expert is a witness who may testify at trial because of special, scientific or technical knowledge which "* * * will assist the trier of fact to understand the evidence or to determine a fact in issue * * *." Evid. R. 702. As such, an expert necessarily brings to each case knowledge of facts and data which are not in evidence, for it is this knowledge which qualifies a witness as an expert. See, *e.g., Kane* v. *Ford Motor Co.* (1984), 17 Ohio App. 3d 111, 112, 17 OBR 173, 174, 477 N.E. 2d 662, 664. Moreover, one reason for the foundation requirements set forth by Evid. R. 703 is the purpose for expert testimony, *viz.,* to aid the jury's understanding or determination of facts which are in evidence. Evid. R. 702; see, generally, Younger, A Practical Approach to the Use of Expert Testimony (1982), 31 Cleve. St. L. Rev. 1, 23-30.

From the foregoing, it is clear that Evid. R. 702 and 703 contemplate a two-stage process for the admission of expert testimony. First, Evid. R. 702 requires that the *trial court* determine whether the witness is qualified to give an expert opinion. Evid. R. 104(A). Necessarily, this determination requires that the scientific, technical or specialized opinion be reliable. See *State* v. *Williams* (1983), 4 Ohio St. 3d 53, 57-59, 4 OBR 144, 147-148, 446 N.E. 2d 444, 446-448. Second, Evid. R. 703 mandates that the expert testimony *to be offered at trial* be based on either the personal perception of the expert or upon facts in the record. Accordingly, to the extent that the expert applies to the facts in evidence a scientific principle, theory, calculation, measurement, or table — which have qualified the witness as an expert — such principle, theory, calculation, measurement, or table need not be in evidence if the predicate facts are in evidence. Cf. *Huffman* v. *Stone* (1971), 26 Ohio St. 2d 159, 160, 55 O.O. 2d 308, 309, 270 N.E. 2d 347, 348, certiorari denied (1971), 404 U.S. 978. We note that, as a matter of practice, the first step may often overlap with the second stage.

Here, the state's witness was asked to express an opinion as to defendant's speed both at the point he applied the brakes and at the point of impact. The expert expressed an opinion as to defendant's speed at either point using three coefficients of friction. Two of the coefficients, .6 and .7, are, according to the expert's testimony, industry standards used to determine speeds based upon braking distances. A third coefficient, .8, was utilized by the expert because of the high performance characteristics of defendant's automobile and tires. Voir dire testimony indicated that this latter coefficient was obtained by the expert from Road and Track magazine. The expert acknowledged, in voir dire, that a review of Road and Track was not a standard practice in his field, but

that he found the information to be reliable.

It is defendant's contention that because the expert's opinion as to defendant's speed was based in part upon the higher coefficient of friction, the testimony was inadmissible pursuant to Evid. R. 703. Defendant argues that since Road and Track was not in evidence, testimony based upon information contained in the magazine was inadmissible. We disagree.

Defendant's argument implies that had the expert relied upon a standard coefficient of friction used by other experts, rather than on the coefficient of friction obtained in Road and Track, the testimony would have been admissible pursuant to Evid. R. 703. This argument, however, misconceives the two-stage process contemplated by Evid. R. 702 and 703. Clearly, the trial court is required to assess an expert's qualifications to testify prior to the admission of expert testimony. This determination necessarily requires the trial court to assess, during voir dire, many factors which are not before the jury. This is precisely the reason for conducting voir dire in the jury's absence. Here, references to Road and Track were made only during voir dire to determine the expert's qualification to testify.

Generally, the determination of whether a witness is qualified to offer testimony as an expert is within the sound discretion of the trial court. *State* v. *Jones* (1981), 67 Ohio St. 2d 244, 251, 21 O.O. 3d 152, 157, 423 N.E. 2d 447, 451; *State* v. *Hipkins* (1982), 69 Ohio St. 2d 80, 82, 23 O.O. 3d 123, 125, 430 N.E. 2d 943, 945. This discretion is not unlimited, but is subject to the provisions of the Rules of Evidence. Specifically, the expert should possess specialized, technical or scientific knowledge. Evid. R. 702; cf. *State* v. *Maupin* (1975), 42 Ohio St. 2d 473,

478-479, 71 O.O. 2d 485, 488, 330 N.E. 2d 708, 712-713, and *Columbus* v. *Dawson* (1986), 28 Ohio App. 3d 45, 46-47, 28 OBR 56, 57-58, 501 N.E. 2d 677, 678-679. Additionally, the proffered testimony should assist the trier of fact in understanding the evidence or in determining a factual issue *and* be relevant to the case. Evid. R. 402 and 702; *Williams, supra,* syllabus. As to this latter requirement under Evid. R. 402, the expert's testimony is relevant insofar as it is reliable. *Williams, supra,* at 57-59, 4 OBR at 147-148, 446 N.E. 2d at 447-448.

Here, the state's expert testified during voir dire that he had a degree in mechanical engineering and experience in accident reconstruction; that he could give an opinion as to defendant's speed based on the length of the skid marks using either of two standard coefficients of friction; that because of the type of automobile and tires the standard coefficients would not accurately reflect defendant's true speed; and that the higher coefficient of friction reported in Road and Track was probably reliable because of his past experience. As such, we cannot conclude that the trial court clearly abused its discretion when it found that the expert was qualified, under Evid. R. 702, to testify as to defendant's speed using the higher coefficient of friction. Certainly, the state's evidence provided a sufficiently reliable basis for the trial court's decision to allow the expert's testimony to go to the jury.

At trial, the expert expressed his opinion as to defendant's speed using three coefficients of friction. This opinion was premised solely upon the facts properly before the jury. The evidence adduced at trial or personally observed by the expert established that defendant was driving a high-performance automobile; that the vehicle was equipped with high-performance tires; that

defendant's vehicle weighed approximately thirty-three hundred pounds[1]; that the pavement on Neil Avenue at the time of the accident was dry; that defendant's vehicle skidded approximately 98.5 feet before impact; that the skid mark was heavy, indicating that all four brakes locked; that defendant's vehicle continued to skid approximatly seventy-nine feet after impact; and that Bobbitt's westbound automobile traveled approximately one hundred twenty-one feet north after the impact.

Given this evidence, we find that all the predicate facts necessary to determine defendant's speed were established at trial. The state's expert merely provided the scientific formula to aid the jury in its understanding of these factors. That formula included both a standard multiplier and a coefficient of friction. Absent this formula, the facts before the jury would have had no specific value. While we agree with defendant that the precise coefficient of friction could have been established by performing skid tests on defendant's car, personal knowledge is only one basis for expert testimony. Evid. R. 703. To the extent that expert witness testimony is premised upon hypothetical questions to aid the jury in its understanding of the evidence, a requirement that expert witnesses personally validate every scientific principle as applied to the facts in evidence shows a misunderstanding of the dual nature of Evid. R. 703. The function of the expert is to bring to the case "scientific, technical or specialized knowledge," which necessarily includes knowledge of facts or data not in evidence, in the form of opinion testimony relevant to the issues and facts before the trier of fact. That is precisely the role the state's expert performed in this case.

Defendant next contends that the trial court erred in allowing the expert to respond to improperly framed hypothetical questions. We note initially that because defendant has not made any reference to specific parts of the transcript on which this claim of error is predicated, we need not address the error. App. R. 12(A) and 16(A)(3) and (4). In any event, defendant's contention is without merit.

Our review of the expert's testimony reveals that many of the questions posed by the state required the expert to give an opinion based upon mathematical computations. Even assuming, *arguendo,* that there is a requirement that hypothetical questions be framed in terms of scientific certainty or probability, we fail to perceive how defendant was prejudiced under the circumstances. Clearly, an answer supplying the solution to a mathematical equation is not subject to objection merely because the question fails to require scientific certainty. While the calculations at bar were somewhat more advanced than simple addition, the complexity of the computation does not detract from the certainty of the answer.

Moreover, this court has previously stated that a hypothetical question is "improper only where it assumes facts not in evidence, unfairly reflects the facts in evidence, or omits facts in evidence so vital to the conclusion of the expert that the question manifestly fails to present the facts which it does include in their true and just relation-

---

[1] Although defendant contends that this weight was obtained from a source not in evidence, that contention is without merit. Clearly, the expert obtained this weight from an industry source published by the manufacturer regarding vehicle weights. Such publication is properly subject to judicial notice and is the type of information within the expert's knowledge.

ship. Whether a hypothetical question is proper lies largely within the discretion of the trial court." *Utility Coals, Inc.* v. *Fruehauf Corp.* (July 20, 1971), Franklin App. No. 71AP-28, unreported; see, also, *Mayhorn* v. *Pavey* (1982), 8 Ohio App. 3d 189, 8 OBR 258, 456 N.E. 2d 1222. Rather, it is the expert's response to a hypothetical question that must be framed in terms of reasonable certainty or probability. *State* v. *Holt* (1969), 17 Ohio St. 2d 81, 46 O.O. 2d 408, 246 N.E. 2d 365; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 133-134, 22 OBR 203, 212, 489 N.E. 2d 795, 805, certiorari denied (1987), 479 U.S. 871. Here, the state did frame many questions in terms of scientific certainty or probability, and the expert framed most of his responses in mathematical terms. As such, any error was nonprejudicial.

Based on the foregoing, defendant's first assignment of error is overruled.

In his second assignment of error, defendant asserts that the trial court erred in failing to declare a mistrial due to misconduct by the prosecutor. Specifically, defendant argues that the prosecutor, on three separate occasions, made comments, either during the examination of defense witnesses or during closing argument, that were sufficiently egregious as to warrant reversal.

Generally, cross-examination of a witness may be directed to "all relevant matters and matters affecting credibility." Evid. R. 611(B). As to matters which are relevant only to the credibility of a witness, it is within the sound discretion of the trial court to set the limits of cross-examination. *Smith* v. *State* (1932), 125 Ohio St. 137, 180 N.E. 695, paragraph two of the syllabus; cf. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 103-105, 2 O.O. 3d 249, 265-267, 357 N.E. 2d 1035, 1055-1056, vacated on other grounds (1978), 438

U.S. 911. Additionally, it is proper to allow cross-examination as to the nonexistence of a material fact even though the witness has given direct testimony that such fact exists. *Phillips* v. *Elwell* (1863), 14 Ohio St. 240, paragraph one of the syllabus; cf. *State* v. *Cox* (1958), 107 Ohio App. 297, 298-300, 8 O.O. 2d 229, 230-231, 152 N.E. 2d 14, 16-17, and *Gault* v. *Hall* (App. 1952), 70 Ohio Law Abs. 129, 132, 127 N.E. 2d 533, 535.

Finally, the prosecution is allowed some latitude in closing arguments. See *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 26, 35 O.O. 2d 8, 14, 215 N.E. 2d 568, 578, certiorari denied (1966), 385 U.S. 930. It is only where the prosecutor's remarks are improper and prejudice a substantial right of the accused that such comments require the declaration of a mistrial. *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14, 14 OBR 317, 318, 470 N.E. 2d 883, 885; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 266, 15 OBR 379, 402, 473 N.E. 2d 768, 793; *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 24, 514 N.E. 2d 394, 400.

Here, we cannot say that the prosecutor's comments were prejudicial. Clearly, defendant's speed and sobriety were at issue, as was the credibility of defendant and the defense witnesses. Contrary to defendant's assertions regarding the cross-examination of a defense witness, there is no requirement that extrinsic evidence be introduced to establish a prior inconsistent statement if such statement is denied, unless there is an indication that the impeaching question may have been posed without a good faith belief that such an inconsistent statement had been made. See Evid. R. 613(A). Rather, where a witness denies having made a prior inconsistent statement, impeachment is complete upon introduction of extrinsic evidence of such statement. Cf. *Dorsten* v. *Lawrence*

(1969), 20 Ohio App. 2d 297, 305, 49 O.O. 2d 392, 397, 253 N.E. 2d 804, 810. If no evidence of the prior statement is adduced, however, there is simply no evidence before the court to impeach the witness' testimony. *Id.* Accordingly, the appropriate remedy is a cautionary instruction to the jury that statements by counsel which are unsupported by the evidence are not to be considered. Cf. *State* v. *Osborne* (June 29, 1984), Ashtabula App. No. 1150, unreported. There is no indication in the record that such instruction was either requested or given. Had defendant requested such instruction, however, the error, if any, was nonprejudicial under the circumstances of this case. The witness not only clarified his statement during cross-examination and on redirect examination, but also testified that he had no independent memory of defendant's speed in any event. The question simply did not affect a substantial right of defendant.

As to the questions regarding defendant's use of alcohol or drugs on the evening of the accident, we find no error in the prosecutor's conduct. It is well-established that the prosecution may test a defendant's versions of the facts given on direct examination. *Phillips* v. *Elwell, supra.* This is especially so, where, as here, there was also evidence before the court suggesting that defendant had consumed more than the two beers he admitted drinking.

Finally, defendant argues that the prosecutor either misstated the law or improperly referred to incompetent or irrelevant evidence during closing argument. First, defendant contends that the prosecutor improperly attempted to shift to defendant the burden of proof by commenting on the failure of defendant to introduce rebuttal witnesses to the state's expert. Second, defendant maintains that the prosecutor attempted to inflame the jury's passion via reference to their collective conscience.

Upon review of these instances, we find no prejudicial error. Clearly, the state may not shift to defendant the burden of proof as to any material element of the crime. Cf. *State* v. *Banks* (Sept. 10, 1987), Franklin App. No. 86AP-1009, unreported.

Here, the state put on evidence that defendant was traveling in excess of seventy m.p.h. in a thirty-five m.p.h. zone. Defendant attempted to rebut this evidence via direct testimony, cross-examination of the state's expert and reference to a photograph of the skid marks. Defendant's counsel pointed to this evidence in closing arguments before the jury. In rebuttal, the prosecutor made reference to the fact that defendant had failed to put on expert testimony to rebut the state's evidence. Assuming such reference to be improper, we find the conduct nonprejudicial under the total circumstances of this case. But, see, *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 86, 3 O.O. 3d 45, 50, 358 N.E. 2d 1081, 1089, vacated on other grounds (1978), 438 U.S. 911, and *State* v. *Woods* (1982), 8 Ohio App. 3d 56, 62, 8 OBR 87, 94, 455 N.E. 2d 1289, 1297.

The prosecutor's statement, given defendant's closing argument, appears to have misunderstood the state of the evidence.[2] Clearly, defendant had put on evidence, not only to rebut the expert's testimony, but direct evidence to support the defense theory. As such, the reference to defendant's failure to call an expert overlooks defendant's evidence. That the error was nonpreju-

---

[2] Arguably, the prosecutor's remarks can be construed not as an attempt to shift the burden of proof, but only as a comment on the weight of the state's evidence relative to the evidence adduced by defendant.

dicial is even more apparent in light of the court's instruction to the jury regarding the weight to be afforded expert testimony and to the fact that closing argument is not evidence.

On the other hand, we do believe the prosecutor's comments to the jury regarding its duty to weigh the facts were improper, but not so improper as to require reversal. Although the prosecutor cast his argument in terms of community standards, such argument is not "equivalent to the exhortation that the jury succumb to public demand as prohibited by * * * *State* v. *Cloud* (1960), 112 Ohio App. 208, 217 * * *." *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 20, 23 OBR 13, 17, 490 N.E. 2d 906, 911.

Based on the foregoing, defendant's second assignment of error is overruled. Having also overruled defendant's first assignment of error, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and BOWMAN, J., concur.