JOURNAL ENTRY AND OPINION
{¶ 1} The appellants, Nancy Maybaum and Scott Maybaum, her husband, appeal the judgment of the Cuyahoga County Court of Common Pleas, Civil Division, in which a jury returned a verdict in favor of the appellee, Blanche Rakita, and awarded no damages to the appellants. It is from this verdict that the appellants now appeal.
 {¶ 2} The instant matter stems from a motor vehicle accident which occurred on February 24, 1998 at the intersection of Chagrin Boulevard and Lander Circle, a traffic circle. While stopped at the intersection and looking left in order to merge into the traffic circle, Nancy Maybaum's vehicle was struck from the rear by Blanche Rakita's vehicle. Officers responded to the accident, and reports were made concerning the extent of damages and nature of the injuries. At trial, Officer Thomas Gibson of the Pepper Pike police department testified that when he arrived on the scene, the two vehicles were in the same position as they were at the time of the incident. Officer Gibson noted scuffs, scuffs on the corner and license plate damage to Maybaum's car.
 {¶ 3} Although the damage to each vehicle was minimal, Maybaum requested to be transported to the hospital for treatment. At the scene, she had complained of neck, bladder, and knee pain.
 {¶ 4} Following the accident, Maybaum sought treatment from her personal physician, Dr. Richard Stein. While treating with Dr. Stein, she complained of knee pain. Because of the ongoing pain, she was referred to another physician for arthroscopic knee surgery; however, because the arthroscopic knee surgery did not adequately alleviate her ailment, she underwent full knee replacement surgery in 1998. Similar to the knee ailment, Maybaum also sought treatment for her lower back in 1998. From 1998 through 2000, she was treated for varying back pain, and in October 2000, she underwent spinal fusion surgery. At trial, Maybaum sought to relate these severe and arguably debilitating injuries to the minor vehicle accident of February 1998.
 {¶ 5} In order to fully understand the extent and history of Maybaum's injuries and ailments, an objective review of the wide range of injuries which she has suffered from prior to the 1998 accident in question is necessary. Beginning in 1993, Maybaum underwent lower back surgery due to a slip-and-fall accident. In 1997, she underwent another lower back surgery for degenerative arthritis. Despite, multiple surgeries, she continued to suffer from lower back pain which necessitated the utilization of nerve blocks to ease the pain.
 {¶ 6} Turning to Maybaum's knee ailment, in 1987 she underwent knee surgery after another slip-and-fall accident at a Chinese restaurant. Thereafter, in 1991, she suffered yet another injury to her knee when she was hit by a semi-truck. Last, in 1996, she was injured again in an automobile accident at which time she began treatment with Dr. Fumich. As a result of that accident, she complained of knee pain, neck pain, and tailbone pain. At this point, it was determined that she was suffering from degenerative changes to her left knee.
 {¶ 7} In addition to the above-stated accidents, Maybaum suffered from several other injuries which are worth noting. In 1997, she underwent surgery for a shattered toe joint caused by a falling can of peaches at a grocery store. In 1993, she injured herself in a fall while getting out of a hot tub in the Bahamas. Last, in 1990, she was treated for fibromyalgia.[1]
 {¶ 8} Additionally, subsequent to the accident in question, Maybaum was involved in yet another motor vehicle accident in July 2000. While driving, she caused her vehicle to travel left of center and then violently flip over. As a result, she lost consciousness and was life-flighted from the scene. As a result of this accident, she was hospitalized for three days for various injuries. Thereafter, she had another operation on her back some three months later.
 {¶ 9} Last, in reviewing the record and testimony adduced at trial, Maybaum, just prior to the accident in question, had apparently contacted her physician, Dr. Fumich, inquiring as to whether she should pursue a second left knee surgery due to excruciating pain in the knee. Rather than perform the surgery at that time, Dr. Fumich advised her to stay the surgery until her back problems had stabilized.
 {¶ 10} The appellants present five assignments for this court's review. The first assignment of error states:
 {¶ 11} I. THE TRIAL COURT ERRONEOUSLY ADMITTED INTO EVIDENCE PHOTOGRAPHS TAKEN OF PLAINTIFF'S AUTOMOBILE WHICH PURPORTED TO SHOW LITTLE OR NO DAMAGE TO SAID VEHICLE AND WAS USED BY DEFENDANT'S COUNSEL TO ARGUE THAT PLAINTIFF'S INJURIES COULD NOT HAVE COME FROM SUCH A MINOR COLLISION.
 {¶ 12} The appellants argue that the lower court erred in admitting photographs which depicted the alleged condition of the vehicles involved in the instant accident. They contend that the photographs were not properly authenticated and were irrelevant to the issues at hand. For the following reasons, the appellants' argument is not well taken.
 {¶ 13} In support of their argument, the appellants point to two recent cases from this court dealing with the admissibility of photographs utilized to correlate physical damage to a vehicle to the physical injuries suffered by the plaintiff. In Hastie v. Dohar (Feb. 28, 2002), Cuyahoga App. No. 79456, this court upheld the exclusion of photographs depicting the damage to a vehicle in which the injured person was riding because expert testimony was necessary to correlate the damage to the vehicle to the injuries suffered by the victim. In Hastie, supra, this court held that when a defense seeks to minimize the injury to the plaintiff's person by showing minor injury to the vehicle via photographs, an expert may by required. (Emphasis added.) Notably, this court held that the facts should dictate when an expert is needed, and the answer to the expert question should be resolved by the trial court. Next, the appellants cite to Morales v. Petitto (Nov. 9, 2000), Cuyahoga App. Nos. 77326 and 77532, in which this court upheld the exclusion of photographs depicting an absence of damage to the exterior of the plaintiff's automobile. The trial court excluded the photographs on the grounds that they did not accurately depict the full extent of the damage to the vehicle as the vehicle's interior was considerably more damaged than its exterior, thus the photographs were unduly prejudicial.
 {¶ 14} We note, decisions concerning the admissibility of photographs are within the sound discretion of the trial court unless the trial court abuses its discretion. See Morales, supra. Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. State v. Wilson (1972), 30 Ohio St.2d 199, 203-204. To be certain, a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relative probative value. State v. Woodards (1966),6 Ohio St.2d 14. "The trial court has broad discretion in the admission * * * of evidence and unless it had clearly abused its discretion * * *, this court should be slow to interfere." State v. Hymore (1967),9 Ohio St.2d 122, 128. For an abuse of discretion to exist, the fact-finder's result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256-257.
 {¶ 15} Hastie and Morales, are easily distinguishable from the case at hand in that there is no concern over whether the jury could be unduly prejudiced by the introduction of the photographs depicting the extent of the damage because there was ample expert testimony proffered by both the appellants and the appellee.
 {¶ 16} At trial, expert testimony was offered as to whether the injuries suffered by the appellant were proximately caused by the accident. Moreover, in no way is this court suggesting that expert testimony is always necessary in order for photographic evidence depicting vehicle damage to be admissible at trial. Generally, photographs showing the extent of damage to vehicles are generally relevant, subject to the provisions of Evid.R. 403, to proving the extent of injury suffered by a person inside the vehicle. See, generally,Krannitz v. Harris (Jan. 19, 2001), Pike App. No. 00CA649. Likewise, quoting J. Corrigan, dissenting in Hastie, the extent of damage to a vehicle is often an excellent indicator to the extent of injuries suffered by a person in that vehicle. To suggest that expert testimony is required as a matter of law not only flies in the face of established precedent, but is ill-advised. Indianapolis Colts v. MetropolitanBaltimore Football Club Ltd. Partnership (C.A. 7, 1994), 34 F.3d 410,415.
 {¶ 17} Last, the appellants argue that the photographs depicting the condition of both vehicles were not properly authenticated and are therefore inadmissible at trial. Granted, the individual who took the photographs was not available to testify; nevertheless, substantial testimony was elicited by both the appellants and the appellee concerning the photographs and the condition of the vehicles. Specifically, Nancy Maybaum testified at trial that the photographs were taken prior to the car being repaired and after the date of the accident, regardless of her interpretation of the extent of damage to the vehicle. Additionally, the responding police officer testified that the photographs were consistent with the damage noted in his police report.
 {¶ 18} Simply, decisions concerning the admissibility of photographs are within the sound discretion of the trial court, and in the case at hand, this court cannot conclude that the lower court erred in any manner in admitting the photographs depicting the condition of the vehicles after the accident. As such, the appellants' first assignment of error is not well taken.
 {¶ 19} The appellants' second assignment of error states:
 {¶ 20} II. EVEN THOUGH DEFENDANT'S COUNSEL ARGUED THAT PLAINTIFF'S BACK SURGERY WAS MORE LIKELY THAN NOT CAUSED BY A SUBSEQUENT AUTOMOBILE ACCIDENT IN JULY 2000, PLAINTIFF WAS ERRONEOUSLY PRECLUDED BY THE TRIAL JUDGE FROM ADMITTING COPIES OF SAID MEDICAL RECORDS THAT CONCLUSIVELY ESTABLISHED THAT PLAINTIFF DID NOT INJURE HER BACK IN THAT ACCIDENT.
 {¶ 21} The appellants argue that the lower court erred in failing to admit into evidence copies of the emergency room medical records outlining treatment for a July 2000 accident. The appellants contend that the appellee inferred that the July 2000 accident actually caused Nancy Maybaum's injuries; therefore, in failing to admit those records into evidence, the appellants were encumbered in refuting this assumption proffered by the appellee.
 {¶ 22} As stated, the admission of evidence is within the sound discretion of the trial court. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See State v. Hymore, supra.
 {¶ 23} In reviewing the record, this court cannot conclude that the lower court abused its discretion in failing to admit the emergency room records concerning Mrs. Maybaum's July 2000 accident.
 {¶ 24} First, the record is replete with instances in which the medical records in question were identified and referred to at trial. Counsel for the appellee utilized the records in cross-examining the appellants' expert. Additionally, Nancy Maybaum's own doctor, Dr. Kalfas, utilized the records in videotape testimony that was viewed by the jury. The trial court's refusal to admit the actual records into evidence did not substantially prejudice the appellants as there existed numerous instances in which the records and their contents were utilized and proffered to the jury during trial.
 {¶ 25} Even assuming arguendo that the failure to admit the medical records into evidence was in error, an error in the admission of evidence may be considered harmless and will not constitute grounds for granting a new trial if it does not affect the substantial rights of the parties. Civ.R. 61. "Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." Hallworth v. Republic Steel Corp.
(1950), 153 Ohio St. 349, paragraph three of the syllabus.
 {¶ 26} In light of the above, we cannot conclude that the lower court erred in failing to admit the medical records in question. The appellants were presented with ample opportunity to utilize the medical records to refute any presumption concerning the manner in which Nancy Maybaum's injuries occurred. Failure to admit the actual records into evidence was not in error; moreover it did not substantially encumber the rights of the appellants. Accordingly, the appellants' second assignment of error is without merit.
 {¶ 27} The appellants' third assignment of error states:
 {¶ 28} III. THE TRIAL JUDGE ERRONEOUSLY PERMITTED DEFENDANT TO INTRODUCE ACCIDENT RECONSTRUCTION EXPERT TESTIMONY THAT WAS UNSCIENTIFIC, SPECULATIVE AND WITHOUT PROPER FOUNDATION.
 {¶ 29} The appellants argue that the appellee utilized an accident reconstruction specialist to somehow dispute Nancy Maybaum's injuries. Notably, the appellants fail to cite to any portion of the record in support of this argument.
 {¶ 30} Brian Tanner, a mechanical engineer registered in the State of Ohio, earned his master's degree in engineering mechanics from the Ohio State University with a subspeciality in biomechanics. Trial testimony revealed that Tanner worked at the Research and Development Division of the National Highway Traffic Safety Administration where he designed and developed crash test dummies and test procedures to evaluate the likelihood of injury in automobile accidents. During this time, he conducted hundreds of accident reconstructions and conducted laboratory experiments to simulate or recreate accidents.
 {¶ 31} At trial, the lower court limited Tanner's testimony to his area of expertise and specifically excluded any testimony as to his opinion with regard to whether Nancy Maybaum was injured in the accident in question. In arriving at his conclusion, Tanner examined the vehicles involved and consulted Consumer Union and Insurance Institute test results on the model of the vehicles to conclude that the damage would have been consistent with a barrier impact of approximately two miles per hour. Nowhere in the transcript does Tanner testify as to his medical opinion concerning the injuries which the appellant suffered.
 {¶ 32} Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides that: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. State v. Maupin (1975), 42 Ohio St.2d 473;State v. Minor (1988), 47 Ohio App.3d 22.
 {¶ 33} In the case at hand, the appellants fail to cite to any portion of the transcript which would lead this court to believe that Tanner proffered his opinion on any subject outside of his expertise. Further, and notably, the appellants offered the testimony of their own engineering expert as to the speed of the vehicles and the force of impact. As such, it is within the province of the fact-finder to weigh the credibility of each. Last, there is no question that Tanner was properly qualified as an expert in the field of biomechanical engineering. Therefore, the appellants' third assignment of error is without merit.
 {¶ 34} The appellants' fourth and fifth assignments of error state:
 {¶ 35} IV. THE JURY'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS LIABILITY WAS STIPULATED YET THE JURY AWARDED NO DAMAGES.
 {¶ 36} V. THE COURT ERRONEOUSLY OVERRULED PLAINTIFF'S MOTION FOR NEW TRIAL AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT.
 {¶ 37} Having a common basis in both law and fact, the appellants' fourth and fifth assignments of error will be addressed together. For the following reasons, these assignments are not well taken.
 {¶ 38} The appellee stipulated to liability solely on the issues of duty and breach of duty, but not as to proximate cause and damages. As such, the jury was left to determine if the accident between Nancy Maybaum and the appellee proximately caused the alleged injuries which the appellants contend were incurred as a result of that accident.
 {¶ 39} At trial, testimony was elicited concerning Nancy Maybaum's long history of prior medical problems, including injuries to her knees and back. Moreover, she was involved in another accident subsequent to the accident in question in which her vehicle was caused to flip over numerous times at rates of speed in excess of 50 miles per hour. Additionally, in reviewing the evidence and the record, it is clear that the damage to her vehicle in the instant accident was minimal. Taking all the evidence into consideration, the jury could have easily concluded that the enormous injuries complained of by her were not the proximate result of the accident between the parties in this action.
 {¶ 40} When a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City ofCleveland (1948), 150 Ohio St. 303, 345.
 {¶ 41} The court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 42} There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 43} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact.
 {¶ 44} In accordance, we cannot conclude that the jury clearly lost its way in reaching its verdict in favor the appellee. At trial, both parties offered substantial evidence in support of each party's position concerning the proximate cause of Nancy Maybaum's injuries. In weighing the credibility of the witnesses, the entire record and all reasonable inferences, it is clear that the jury did not lose its way and create a manifest miscarriage of justice in reaching its verdict.
 {¶ 45} Likewise, we cannot conclude that the lower court abused its discretion in failing to order a new trial as urged in the appellants' fifth assignment of error. Civil Rule 59(A)(6) provides that a trial court may order a new trial if it is apparent that the verdict is not sustained by the manifest weight of the evidence. A reviewing court may reverse the trial court's order if the trial court abused its discretion in failing to order a new trial. Antal v. Olde Worlde Products
(1984), 9 Ohio St.3d 144, 145. The term abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. The high abuse of discretion standard defers to the trial court order because the trial court's ruling may require an evaluation of witness credibility, which is not apparent from the trial transcript and record. Schlundt v. Wank (April 17, 1997), Cuyahoga App. Case No. 70978. Therefore, as long as the evidence is supported by substantial competent credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial. Id.
Judgment affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., CONCURS; PATRICIA A. BLACKMON, J., CONCURS IN JUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] FMS (fibromyalgia syndrome) is a widespread musculoskeletal pain and fatigue disorder for which the cause is still unknown. Fibromyalgia means pain in the muscles, ligaments and tendons — the fibrous tissues in the body. FMS was previously called fibrositis, implying that there was inflammation in the muscles, but research later proved that inflammation did not exist. Fibromyalgia Network (2002), http://www.fmnetnews.com/pages/ basics.html.