[Cite as *State v. Carter*, 2017-Ohio-8864.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104874**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DEMETRIUS H. CARTER

DEFENDANT-APPELLANT

## JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603056-A

**BEFORE:** Laster Mays, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 7, 2017

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Jeffrey Schnatter
Glen Ramdhan
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Demetrius H. Carter ("Carter"), appeals his guilty verdict and sentence, and asks this court to reverse his conviction and remand to the trial court for a new trial. After a review of the record, we reverse and remand.

{¶2} Carter was found guilty of one count of rape, a first-degree felony in violation of R.C. 2907.02(A)(2); three counts of kidnapping, first-degree felonies in violation of R.C. 2905.01(A)(4); and two counts of gross sexual imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(1). He was sentenced to a total of eight years imprisonment and required to register as a tier three sex offender.

## I.     Facts

{¶3} B.C., the daughter of Carter, accused Carter of kidnapping, rape, and forcing her to have unwanted sexual conduct with him. B.C. testified that her father, Carter, began making sexual advances towards her when she was in the seventh grade. B.C. recalled one moment when she and Carter were lying next to each other watching movies. Carter told B.C. that he was cold and requested that she move closer to him. When B.C. moved closer to him, she felt Carter's pelvis poking her. Carter continued to push his pelvis closer to B.C., and his actions made B.C. feel confused and as if she could not get up and walk away.

{¶4} Once Carter moved out of the family home, as a result of divorce from B.C.'s mother, B.C. would see Carter at his sister's house. One occasion when B.C. was

visiting Carter at Carter's sister's house, B.C. awoke to Carter hugging her around the waist. Carter also began pushing his pelvis against B.C. and groping her chest. Then Carter used his hand to rub B.C.'s vagina. B.C. testified that Carter rubbed the inside and outside of her vagina with his fingers. B.C. felt as if she could not get up and walk away from Carter.

{¶5} Another incident took place at Carter's sister's new home where B.C. and Carter were sleeping on the floor. B.C. awoke to Carter rubbing her breasts. Carter then told B.C. that he loved her. The next morning Carter told B.C. that they needed to stop having sexual contact, but he continued. B.C. did not feel as if she could get away from Carter while he was touching her.

{¶6} B.C. also visited Carter at Carter's father's home. During a visit, B.C. woke to Carter holding her around the waist while pushing his pelvis against her. B.C. tried to move away from him, but Carter pulled her closer. Carter began groping B.C.'s breast and then pulled her pants down. Carter got out of the bed, and B.C. heard him open a plastic wrapper. Carter then came back to the bed and laid down behind B.C. B.C. felt Carter touch her vagina both inside and out, but was unsure of what he was touching her with.

{¶7} B.C. sent her mother, S.C., a text message detailing the events of Carter touching her. S.C. went to the police, and B.C. was first interviewed by Lauren Hennessey ("Hennessey"), a social service worker with the Department

of Children and Family Services. During her testimony, the state asked her, "When you met with [the victim], what types of information is it important for you to learn for you to make the referrals that you are tasked with making?" (Tr. 323.) Hennessey responded by stating, "So we make referrals typically, you know, when there's credible, consistent disclosures, which hers was. And, you know, she was seeking — the family was seeking medical — not medical, mental health treatment as well because of what had happened." (Tr. 323.)

{¶8} B.C.'s case was referred to Julie Loyke ("Loyke"), a certified pediatric nurse practitioner who performs non-acute sexual abuse examinations for the Cleveland Care Clinic. Loyke testified as to her experiences practicing as a Sexual Assault Nurse Examiner ("SANE"). Loyke described her conversation with B.C., and the procedures used to interview and examine B.C.

{¶9} At the end of the trial, Carter was found guilty and sentenced to eight in prison. Carter filed this timely appeal arguing six assignments of error for our review, however, assignment of error three is dispositive of the case, so we need not address the other five. App.R. 12.

I. The state failed to present sufficient evidence of the offenses charged;

II. The appellant's convictions are against the manifest weight of the evidence;

III. The trial court erred in allowing the state's witness to opine regarding the appellant's guilt, in violation of the Ohio Rules of Evidence, the right to a fair trial, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

IV.    Appellant was denied due process and a fair and impartial trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, Section 16 of the Ohio Constitution based on prosecutorial misconduct;

V.    The appellant was denied effective assistance of counsel in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution; and

VI.    The trial court erred in allowing the admission of the accuser's text message allegation which was offered for the sole purpose of demonstrating a prior consistent message without first showing recent fabrication, and which denied the appellant due process and the right to a fair trial.

## III.   Prejudicial Testimony

### A.   Standard of Review

{¶10} "It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court." *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 32, quoting *State v. Heinish*, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990).

> Further, Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court.

*Id.* at ¶ 34 quoting *State v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d 708 (1975); *State v. Minor*, 47 Ohio App.3d 22, 546 N.E.2d 1343 (10th Dist.1988).

**{¶11}** In addition,

> [T]he decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 50, citing *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *Id.*, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

*State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 16.

## B. Law and Analysis

**{¶12}** Carter argues that the trial court erred in allowing the state's witnesses to opine regarding the appellant's guilt, in violation of the Ohio rules of evidence, violation of the right to a fair trial, and in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. Specifically, Carter argues that the testimony of Hennessey and Loyke regarding B.C.'s accusations being credible and consistent disclosures amounted to prejudicial and impermissible testimony. "The admission or exclusion of evidence rests within the sound discretion of the trial court." *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 33, quoting *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (1989).

Further, Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. *State v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d 708 (1975); *State v. Minor*, 47 Ohio App.3d 22, 546 N.E.2d 1343 (10th Dist.1988).

*Id*. at ¶ 34.

{¶13} Hennessey was asked by the state, "what types of information is it important for you to learn for you to make the referrals that you are tasked with making?" (Tr. 323.) Hennessey responded,

[S]o we make referrals typically, you know, when there's credible, consistent disclosures, which hers was. And, you know, she was seeking — the family was seeking medical — not medical, mental health treatment as well because of what had happened.

Carter argues that the testimony bolsters the allegations. We disagree.

{¶14} It is clear that the state did not ask Hennessey what her opinion was regarding the veracity of B.C. Rather, the record shows that the state asked Hennessey, as a professional, what is important for her to learn from an individual to make necessary referrals?

An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, an expert may provide testimony that supports "the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 690 N.E.2d 881 (1998).

*State v. Ervin*, 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, ¶ 34. We find that Hennessey's testimony was admissible under Evid.R. 703.

{¶15} Additionally, Hennessey testified that her interview began with her getting to know B.C. and information about B.C.'s family. After Hennessey learned of the disclosures, it allowed her to make referrals.

State: During the course of the interview, did you learn the information that you required to determine what referrals you needed to make for B.C.?

Hennessey: Yes. Based on the interview, she was referred to the Cleveland Care Clinic.

State: What is the Cleveland Care Clinic?

Hennessey: It's where she can go and get a medical assessment, like a physical exam, and then also another interview with the professional. They're trained as well.

State: Is the Care Clinic focused on a particular area of medical?

Hennessey: They do. They focus on sexual assault, sexual abuse cases.

State: That referral was based on your interview of B.C.?

Hennessey: Yes, based on the information she shared with me.

State: Where is the Care Clinic run through?

Hennessey: The Cleveland Clinic, the main campus, substance abuse.

State: Did you make any other referrals?

Hennessey: The family was referred to Cleveland Rape Crisis as well.

(Tr. 324-325.)

**{¶16}** Permissible testimony for purposes of medical diagnosis or treatment fall under Evid.R. 803(4). It states,

> [S]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Pursuant to Ohio case law and Evid.R. 803(4), statements made by a social worker for the purposes of medical diagnosis or treatment are admissible. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220(1989), citing *State v. Krzywkowski*, 8th Dist. Cuyahoga No. 80392, 2002-Ohio-4438, ¶ 120. Hennessey's role was important in determining what type of subsequent treatment was necessary for B.C. We find that Hennessey's role was pertinent to medical treatment or diagnosis, and thus her testimony falls clearly within the exception to the hearsay rule under Evid.R. 803(4). *Id.* at ¶ 123.

**{¶17}** The state asked Loyke,

> [T]hrough that specialized training and through that years of experience in all of those patients, have you learned things about sexual assault, child sexual assault victims in particular that you would not have suspected prior to your experience and training?

(Tr. 354.) Loyke responded,

> I would have to say yes, that I have been part of the process of every individual child that presents with sexual assault has a story to tell and has a different story to tell. There is no way that we could systemically categorize every situation that we would see. It is important that they tell their story and it's important that we believe them.

*Id.*

**{¶18}** Carter argues that Loyke's statement about the importance of believing a child who tells their sexual assault story was prejudicial and significantly impacted his trial. We agree. The SANE nurse was asked whether she made any recommendations in B.C.'s case. In response, she stated:

> Yes. I recommended that she continue with counseling. I reassured her that the exam was normal, but that even though it was normal, we still believe her disclosure and that we will be following through with whatever is required on our end to help her along.

(Tr. 367-368.)

**{¶19}** Like the social worker, Loyke testified that she recommended counseling. However, unlike Hennessey, Loyke testified that she believed B.C.'s disclosures.

> This court has held that it is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Pizzillo*, 7th Dist. Carroll No. 746, 2002-Ohio-446, citing *Boston* at 129.

*State v. Wilson*, 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, ¶ 48.

**{¶20}** Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Middleburg Hts. v. Lasker*, 2016-Ohio-5522, 76 N.E.3d 372, ¶ 16 (8th Dist.). In order to find an error was harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d

281, 290, 452 N.E.2d 1323 (1983). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992).

> **{¶21}** Ohio courts have held that

> [a] *Boston* violation may be harmless error beyond a reasonable doubt when considering certain factors. Those factors include "(1) if the victim testifies and is subject to cross-examination, (2) the state introduces substantial medical evidence of sexual abuse, and (3) the expert or lay person's opinion testimony is cumulative to other evidence." *State v. Palmer*, 9th Dist. Medina No. 2323-M, 1995 Ohio App. LEXIS 514 (Feb. 8, 1995); *State v. Lewis*, 9th Dist. Summit No. 14632, 1991 Ohio App. LEXIS 3880 (Aug. 14, 1991); *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 44.

> However, a finding of harmless error is not justified if the case is a "credibility contest" between the victim and the defendant. *State v. Burrell*, 89 Ohio App.3d 737, 746, 627 N.E.2d 605 (9th Dist.1993). Thus, in order to find a Boston violation harmless, some independent evidence must exist when it is a credibility contest between the defendant and the victim. *State v. West*, 8th Dist. Cuyahoga No. 90198, 2008-Ohio-5249.

*State v. Eisermann*, 8th Dist. Cuyahoga No. 100967, 2015-Ohio-591, ¶ 63-64.

**{¶22}** After careful consideration, we find that the trial court's error in permitting Loyke's testimony that rendered an opinion on the veracity of B.C.'s disclosures were not harmless error. Loyke's impermissible testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." *Boston*, 46 Ohio St.3d 108, at 129, 545 N.E.2d 1220, quoting *State v. Eastham*, 39 Ohio St.3d 307, 530 N.E.2d 409 (1988). In the absence of substantial medical evidence of sexual abuse or

corroborating evidence, this case hinged on issues of credibility. While B.C. testified and was subject to cross-examination, Loyke's testimony was significant, it bolstered the credibility of B.C.'s testimony, and was not merely cumulative to other evidence. Moreover, the SANE nurse's testimony that she "believed" B.C.'s disclosure is particularly troublesome because it was made in direct reference to the fact that B.C.'s "head-to-toe" medical examination results were "normal" and did not reveal any physical injuries or clear signs of sexual abuse. Therefore, the admission of Loyke's testimony concerning the credibility of B.C.'s disclosure was not harmless beyond a reasonable doubt. For this reason, we reverse Carter's conviction and remand for a new trial.

{¶23} The remaining assignments of error are moot pursuant to App.R. 12(A), and therefore a determination on those issues are not required.

{¶24} Judgment is reversed and remanded.

It is ordered that the appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY